## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: _____ |
| | ) | |
| BRENTWOOD INVESTMENT GROUP, | ) | |
| LLC, SDGA ADAMS PARK, LLC, and | ) | |
| ROBERT GORDON | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Kinsale Insurance Company ("Kinsale"), by and through counsel,
files this Complaint for Declaratory Judgment against Defendants Brentwood
Investment Group, LLC ("Brentwood"), SDGA Adams Park, LLC ("SDGA"), and
Robert Gordon ("Gordon"). In support thereof, Kinsale alleges as follows:

## NATURE OF THE ACTION

1.

This insurance coverage declaratory action arises out of the claim that Kinsale
owes Brentwood and SDGA a defense and indemnification in connection with an
underlying action, now styled *Robert Gordon v. Brentwood Investment Group, LLC
and SDGA Adams Park, LLC.,* State Court of Fulton County, Georgia, Case No.

24EV007592 (the "Underlying Lawsuit" or the "Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached hereto as Exhibit **A**. Kinsale joins Robert Gordon (the "Underlying Plaintiff") as a party to this action because of his role as the Plaintiff in the Underlying Lawsuit, to ensure that it can obtain complete relief by resolving all issues between the parties.

2.

Kinsale seeks a judicial declaration that it has no duty to defend or indemnify Brentwood, SDGA, nor any other potential defendant in the Underlying Lawsuit under the Primary Policy and Excess Policy Kinsale issued to Brentwood and SDGA.

## **THE PARTIES**

3.

Kinsale Insurance Company is a corporation formed and existing under the laws of the state of Arkansas, with its principal place of business in Virginia. Kinsale is a surplus lines insurer authorized to provide insurance within the State of Georgia. For the purpose of diversity, Kinsale is a citizen of Arkansas and Virginia.

4.

Defendant Brentwood is a domestic limited liability company formed and existing under the laws of the state of Georgia. Upon information and belief,

Brentwood's sole member is Jing-Yu Lai. Jing-Yu Lai is a resident and citizen of California. Brentwood is therefore a resident and citizen of California. Brentwood may be served through its registered agent Joseph H. Beasley, at 315 West Ponce De Leon Avenue, Suite 475, Decatur Georgia 30030.

5.

Defendant SDGA is a domestic limited liability company formed and existing under the laws of the state of Georgia. Upon information and belief, SDGA's sole member is Jing-Yu Lai. Jing-Yu Lai is a resident and citizen of California. SDGA is therefore a resident and citizen of California. SDGA may be served through its registered agent, Georgia Registered Agent LLC, at 8735 Dunwoody Place, Suite 6, Atlanta Georgia 30350.

6.

Defendant Robert Gordon lives and permanently resides at 2008 Joseph E. Boone Blvd NW, Atlanta Georgia 30314, and therefore is a citizen of Georgia. He may be served at his residence at 2008 Joseph E. Boone Blvd NW, Atlanta Georgia 30314.

## JURISDICTION AND VENUE

### 7.

This Court has personal jurisdiction over Brentwood and SDGA because each engages in business in Georgia and has sufficient contacts with the State of Georgia such that this Court has personal jurisdiction over Brentwood and SDGA.

### 8.

This Court has personal Jurisdiction over Gordon because Gordon is a citizen and resident of the State of Georgia.

### 9.

This Court has subject matter jurisdiction over each of the claims based on diversity grounds. Pursuant to 28 US.C. § 1332, this Court has jurisdiction as Kinsale has complete diversity of citizenship from each and every one of the Defendants and the amount in controversy exceeds $75,000, exclusive of interest of costs.

### 10.

Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this litigation occurred in this District.

### 11.

This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Kinsale's obligations under the policies of insurance issued to Defendants

Brentwood and SDGA. Kinsale is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policies, including Brentwood and SDGA's rights to defense and indemnity from the Underlying Lawsuit. An actual case and controversy of a justiciable nature exists between the parties involving those duties, rights, and obligations, if any, under the subject policies. Thus, Kinsale is entitled to bring this declaratory judgment action in this Court.

## FACTUAL BACKGROUND

### 12.

Brentwood owns Grove Adams Park Apartments located at 1991 Delowe Drive, SW, Atlanta, Georgia 30311 ("the Property").

### 13.

On November 29, 2022, the Underlying Plaintiff allegedly visited his girlfriend, Monique Walker ("Monique"), at the Property, where she resided with her daughter, Zianna Walker ("Zianna").

### 14.

Zianna's ex-boyfriend, Joe Noel ("Noel"), allegedly entered the premises through an inoperable gate.

15.

Noel caused a "loud and extended" argument in the Property's parking lot, and allegedly shot multiple times at the apartment. (Ex. A, Complaint, ¶ 16).

16.

According to the Underlying Complaint, the Underlying Plaintiff was shot four times. (Ex. A, Complaint, ¶ 16).

17.

Plaintiff's injuries arose out of a "violent shooting". (Ex. A, Complaint, ¶ 57).

18.

On August 26, 2024, the Underlying Plaintiff filed the Underlying Lawsuit against Brentwood and SDGA for injuries he allegedly sustained as a result of the shooting Incident.

19.

Throughout the Underlying Complaint, the Underlying Plaintiff repeatedly identifies the shooting as the basis for his injuries and the Underlying Defendants' purported liability. (Ex. A, Complaint, ¶¶ 28, 38, 51, 53, 57, 58).

20.

In the Underlying Complaint, the Underlying Plaintiff is referred to as the victim of a "violent shooting". (Ex. A, Complaint, ¶ 53).

21.

The Underlying Complaint alleges that the ex-boyfriend was allowed to enter the complex because the Underlying Defendants "[f]ailed to implement adequate security". (Ex. A, Complaint, ¶ 18).

22.

The Underlying Complaint alleges that the Underlying Defendants' failure to maintain the Property was likely to result in the injuries suffered by the Underlying Plaintiff. (Ex. A, Complaint, ¶ 44).

23.

A police report was filed regarding the Incident. A true and correct copy of the police report is attached hereto as Exhibit **B.** The police report indicates that the shooter was charged with aggravated assault. (Ex. B, Police Report, p. 2 of 3).

24.

In the Underlying Complaint, the Underlying Plaintiff states that the pain and suffering he faced may result in permanent injury, and the shooting which caused this is the basis of the Underlying Lawsuit. (Ex. A, Complaint, ¶ 28, 38).

25.

In the Underlying Complaint, the Underlying Plaintiff seeks punitive damages in addition to other compensatory damages. (Ex. A, Complaint, ¶ 59).

## THE POLICY

### 26.

Policy No. 0100194215-0 (the "Primary Policy") and Policy No. 0100194710-0 (the "Excess Policy") (collectively, the "Policies"), which Kinsale issued to Brentwood and SDGA for the period June 2, 2022, to June 2, 2023, provided certain property damage and liability coverage to Brentwood and SDGA with respect to the Property, subject to the Polices' terms, conditions, limitations, and exclusions. True and correct copies of the Primary Policy and Excess Policy are attached hereto as Exhibit **C** and Exhibit **D**, respectively.

### 27.

The Excess Policy provides that "[t]his policy shall follow the terms, definitions, conditions and exclusions" of the Primary Policy, except to the extent any provisions within the Excess Policy conflict with the Primary Policy. (Ex. D, Excess Policy, CAX0001 0817 p. 1 of 11).

### 28.

Brentwood and SDGA sought defense and indemnification with respect to the Underlying Lawsuit under the Policies.

29.

Kinsale undertook the defense of Brentwood and SDGA in the Underlying Lawsuit subject to a complete reservation of rights. A true and correct copy of the reservation of rights correspondence issued to Brentwood and SDGA is attached hereto as Exhibit **E**.

30.

The insuring agreement for the Primary Policy's Coverage A provides as follows:

> [Kinsale] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Kinsale] will have the right and duty to defend the insured against any "suit" seeking those damages.

(Ex. C, Primary Policy, CG 00 01 04 13, p. 1 of 16).

31.

The Primary Policy states that "[t]his insurance applies to "bodily injury" and "property damage" only if: The "bodily injury" or "property damage" is caused by an "occurrence". (Ex. C, Primary Policy, CG 00 01 04 13, p. 1 of 16).

32.

The Primary Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Ex. B, Primary Policy, CG 00 01 04 13, p. 13 of 16).

33.

The Primary Policy defines "occurrence" to mean "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. C, Primary Policy, CG 00 01 04 13, p. 15 of 16).

34.

The Primary Policy contains an Assault and Battery Exclusion, which states:

> This insurance does not apply to any claim or 'suit' for 'bodily injury' [ ] arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:
>
> 1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contract, or threat;
>
> 2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;
>
> 3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

5. The reporting or failing to report to the proper authorities;

6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;

7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;

8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or 'suit' regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

(Ex. C, Primary Policy, CAS3002 1016, p. 1 of 1).

35.

The Primary Policy contains an Eviction and Failure to Maintain Exclusion,

which states:

> A. The following exclusions are added to this policy:
>
> This insurance does not apply to any claim or "suit" for "bodily injury" . . . arising directly or indirectly out of, related to, or, in any way involving:
>
> 1. Violation of any law, local order or directive involving any duty to:
>
>    a. Maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition; or
>
>    b. Restore any room, dwelling or premises to a safe, sanitary, healthy, habitable or tenantable condition.
>
> * * *
>
> B. The exclusions set forth in this endorsement shall apply:
>
>    a. Whether the insured may be liable as an owner, landlord, tenant, operator or property manager or in any other capacity; and
>
>    b. To any obligation to pay any attorneys' fees or costs, or share damages with, indemnify or repay someone else who must pay damages because of "bodily injury" . . . arising out of items 1. through 6. above; and
>
>    c. To the negligent hiring, employment, training, monitoring, supervision, or retention of any employee or agent of any insured with respect to items 1. through 6. above.

(Ex. C, Primary Policy, CA3103 0718, pp. 1-2 of 2).

36.

The Primary Policy includes a Duty to Defend Exclusion which states that "[w]here there is no coverage under this Policy, there is no duty to defend." (Ex. C, Primary Policy, CAS3043 0621, p. 2 of 3).

37.

The Excess Policy contains an Assault and Battery Exclusion, which states:

This insurance does not apply to any claim or 'suit' for injury or damage arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contract, or threat;

2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;

3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

5. The reporting or failing to report to the proper authorities;

6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;

7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;

8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or 'suit' regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

(Ex. D, Excess Policy, CAX3024 1016, p. 1 of 1).

38.

The Excess Policy contains an Absolute Firearms Exclusion, which states:

This insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or in any way involving the use of any firearm.

This exclusion applies to any claim or suit regardless of whether the use of a firearm is the initial precipitating cause or is in any

way a cause of bodily injury, property damage, personal and advertising injury or any other injury or damage and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged bodily injury, property damage, personal and advertising injury or other injury or damage, arises out of a chain of events that involves or includes the use of a firearm at any point.

This exclusion applies regardless of intent and regardless of the particular cause of action asserted including, but not limited to, negligence or other wrongdoing in:

1. The prevention or suppression, or failure to prevent or suppress, any such act or incident;

2. The insured's actual or alleged negligent employment, supervision, hiring, training, or retention of any employee, independent contractor, or any other person or organization;

3. Reporting or failure to report to the proper authorities any act or incident involving the use of a firearm;

4. Conducting or failing to conduct an investigation or background check; or

5. Providing or failing to provide first aid or medical treatment for any injury arising out of the use of a firearm.

(Ex. D, Excess Policy, CAX3162 1121, p. 1 of 1).

39.

The Excess Policy contains an Eviction and Failure to Maintain Exclusion, which states:

A. The following exclusions are added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury" . . . arising directly or indirectly out of, related to, or, in any way involving:

2. Violation of any law, local order or directive involving any duty to:

   a. Maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition; or

   b. Restore any room, dwelling or premises to a safe, sanitary, healthy, habitable or tenantable condition.

                                    * * *

B. The exclusions set forth in this endorsement shall apply:

   a. Whether the insured may be liable as an owner, landlord, tenant, operator or property manager or in any other capacity; and

   b. To any obligation to pay any attorneys' fees or costs, or share damages with, indemnify or repay someone else who must pay damages because of "bodily injury" . . . arising out of items 1. through 6. above; and

   c. To the negligent hiring, employment, training, monitoring, supervision, or retention of any employee or agent of any insured with respect to items 1. through 6. above.

(Ex. D, Excess Policy, CAX3084 0718, p. 1 of 1).

40.

The Excess Policy contains a punitive damages exclusion that states "this insurance does not apply to any claim or suit for any punitive or exemplary damages, fines or penalties arising out of injury or damage." (Ex. D, Excess Policy, CAX3045 0110, p. 1 of 1).

41.

The Excess Policy includes a Duty to Defend Exclusion which states that "[w]here there is no coverage under this policy, there is no duty to defend." (Ex. D, Excess Policy, CAX0001 0817, p. 3 of 11).

## COUNT I – DECLARATORY JUDGMENT: THE UNDERLYING LAWSUIT DOES NOT ALLEGE AN OCCURRENCE

42.

The Policy states that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: The 'bodily injury' or 'property damage' is caused by an 'occurrence'." (Ex. C, Primary Policy, CG 00 01 04 13, p. 1 of 16).

43.

The Primary Policy defines "occurrence" to mean "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. C, Primary Policy, CG 00 01 04 13, p. 15 of 16).

44.

The Underlying Lawsuit arises from and is based on a shooting. This shooting was an intentional criminal act, and not an accident. (Exhibit B, Police Report, p. 2 of 3). As such, these acts do not constitute an accident, and therefore, there was no occurrence triggering coverage under the Primary Policy.

45.

As the Excess Policy follows the Primary Policy, there was no occurrence triggering coverage under the Primary Policy. (Ex. D, Excess Policy, CAX0001 0817 p. 1 of 11).

46.

Accordingly, Kinsale is entitled to a declaration that the Policies do not provide coverage to Brentwood or SDGA in connection with the Underlying Lawsuit, and that Kinsale has no duty to defend or indemnify Brentwood or SDGA.

## COUNT II – DECLARATORY JUDGMENT: PRIMARY POLICY'S ASSUALT OR BATTERY EXCLUSION PRECLUDES COVERAGE FOR THE UNDERLYING LAWSUIT

47.

Kinsale repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

48.

The Primary Policy does not cover any occurrence arising out of assault or battery whether provoked or unprovoked, including but not limited to "[t]he failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could

contribute to any assault, battery, harmful or offensive contact, or threat…" (Ex. C, Primary Policy, CAS3002 1016, p. 1 of 1).

49.

Throughout the Underlying Complaint, the Underlying Plaintiff repeatedly identifies the shooting as the basis for his injuries and the Underlying Defendants' purported liability. (Ex. A, Complaint, ¶¶ 28, 38, 51, 53, 57, 58).

50.

All of the causes of action asserted against Brentwood and SDGA in the Underlying Lawsuit arise out of the shooting at the Property and, therefore, fall within the Primary Policy's Assault and Battery Exclusion.

51.

Even if this matter involved an occurrence, which it does not, this matter would be barred from coverage pursuant to the Primary Policy's Assault and Battery Exclusion.

52.

Coverage for the Underlying Lawsuit is, therefore, excluded by the Primary Policy's Assault and Battery Exclusion, as all of the alleged causes of action within the Underlying Lawsuit arise of the alleged assault, battery, harmful or offensive contact, or threat.

53.

Accordingly, Kinsale is entitled to a declaration that the Primary Policy does not provide coverage for the Underlying Lawsuit. Kinsale is also entitled to a declaration that it has no duty to defend or indemnify Brentwood or SDGA in connection with the Underlying Lawsuit.

### COUNT III – DECLARATORY JUDGMENT: PRIMARY POLICY'S EVICTION AND FAILURE TO MAINTAIN EXCLUSION PRECLUDES COVERAGE IN THE UNDERLYING LAWSUIT

54.

Kinsale repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

55.

The Primary Policy does not cover any claims arising out of the violation of law involving any duty to maintain a property in safe condition. (Ex. C, Primary Policy, CA3103 0718, pp. 1-2 of 2).

56.

Here, the Underlying Lawsuit alleges that the shooting occurred as a result of the Underlying Defendants' negligence in failing to maintain the property. (Ex. A, Complaint, ¶ 28).

57.

Even if this matter involved an occurrence, which it does not, this matter would be barred from coverage pursuant to the Primary Policy's Eviction and Failure to Maintain exclusion.

58.

Coverage for the Underlying Lawsuit is, therefore, excluded by the Primary Policy's Eviction and Failure to Maintain exclusion, as all the alleged causes of action within the Underlying Lawsuit would not have occurred without the Underlying Defendants' alleged failure to maintain the property in a safe manner.

59.

Accordingly, Kinsale is entitled to a declaration that Kinsale does not owe a duty to defend or indemnify Brentwood or SDGA is connection with the Underlying Lawsuit pursuant to the Primary Policy's Eviction and Failure to Maintain Exclusion.

## COUNT IV – DECLARATORY JUDGMENT: PRIMARY POLICY'S DUTY TO DEFEND EXCLUSION NEGATES A DUTY TO DEFENED THE UNDERLYING LAWSUIT

60.

Kinsale repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

61.

The Primary Policy contains a Duty to Defend Exclusion which states that "[w]here there is no coverage under this Policy, there is no duty to defend. (Ex. C, Primary Policy, CAS3043 0621, p. 2 of 3).

62.

As set forth in the preceding and subsequent counts, coverage to Brentwood and SDGA for the Underlying Lawsuit is barred under the Primary Policy.

63.

Accordingly, Kinsale is entitled to a declaration that Kinsale does not owe a duty to defend Brentwood or SDGA is connection with the Underlying Lawsuit pursuant to the Primary Policy's Duty to Defend Exclusion.

## COUNT V – DECLARATORY JUDGMENT: THE EXCESS POLICY'S ASSUALT OR BATTERY EXCLUSION PRECLUDES COVERAGE FOR THE UNDERLYING LAWSUIT

64.

Kinsale repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

65.

The Excess Policy does not cover any occurrence arising out of assault or battery whether provoked or unprovoked, including but not limited to "[t]he failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat…" (Ex. D, Excess Policy, CAX3024 1016, p. 1 of 1).

66.

Throughout the Underlying Complaint, the Underlying Plaintiff repeatedly identifies the shooting as the basis for his injuries and the Underlying Defendants' purported liability. (Ex. A, Complaint, ¶¶ 28, 38, 51, 53, 57, 58).

67.

All of the causes of action asserted against Brentwood and SDGA in the Underlying Lawsuit arise out of the shooting at the Property and, therefore, fall within the Policy's Assault and Battery Exclusion.

68.

Even if this matter involved an occurrence, which it does not, this matter would be barred from coverage pursuant to the Policy's Assault and Battery Exclusion.

69.

Coverage for the Underlying Lawsuit is, therefore, excluded by the Excess Policy's Assault and Battery Exclusion, as all of the alleged causes of action within the underlying Lawsuit arise out of an alleged assault, battery, harmful or offensive contact, or threat.

70.

Accordingly, Kinsale is entitled to a declaration that the Excess Policy does not provide coverage for the Underlying Lawsuit. Kinsale is also entitled to a declaration that it has no duty to defend or indemnify Brentwood or SDGA in connection with the Underlying Lawsuit under the Excess Policy.

## COUNT VI – DECLARATORY JUDGMENT: THE EXCESS POLICY'S FIREARMS EXCLUSION PRECLUDES COVERAGE FOR THE UNDERLYING LAWSUIT

71.

Kinsale repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

72.

The Underlying Lawsuit seeks damages based upon the alleged shooting of the Underlying Plaintiff with a firearm.

73.

The Excess Policy does not cover any claim or suit related to or in any way involving the use of any firearm, "including, but not limited to, negligence or other wrongdoing in [t]he prevention or suppression, or failure to prevent or suppress, any such act or incident; [or] …[t]he insured's actual or alleged negligent employment, supervision, hiring, training, or retention of any employee, independent contractor, or any other person or organization…" (Ex. D, Excess Policy, CAX3162 1121, p. 1 of 1).

74.

The Excess Policy's Absolute Firearm Exclusion applies "regardless of intent and regardless of the particular cause of action asserted." (Ex. D, Excess Policy, CAX3162 1121, p. 1 of 1).

75.

The Underlying Lawsuit and all the causes of action asserted therein are based on the Underlying Plaintiff being shot with a firearm at the Property.

76.

Even if this matter involved an occurrence, which it does not, this matter would be barred from coverage pursuant to the Excess Policy's Absolute Firearm Exclusion.

77.

Therefore, coverage for the Underlying Lawsuit is excluded by the Excess Policy's Absolute Firearm Exclusion, as all of the alleged causes of action in the Underlying Lawsuit arise out an incident involving a firearm. (Ex. A, Complaint, ¶¶ 28, 38, 51, 53, 57, 58).

78.

Accordingly, Kinsale is entitled to a declaration that the Excess Policy does not provide coverage for the Underlying Lawsuit. Kinsale is also entitled to a declaration that it has no duty to defend or indemnify Brentwood or SDGA in connection with the Underlying Lawsuit under the Excess Policy.

## COUNT VII – DECLARATORY JUDGMENT: THE EXCESS POLICY'S DUTY TO DEFEND EXCLUSION BARS COVERAGE IN CONNECTION WITH THE UNDERLYING LAWSUIT

79.

Kinsale repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

80.

The Excess Policy contains a Duty to Defend Exclusion which states that "[w]here there is no coverage under this policy, there is no duty to defend." (Ex. D, Excess Policy, CAX0001 0817, p. 3 of 11).

81.

As set forth in the preceding and subsequent counts, coverage to Brentwood or SDGA for the Underlying lawsuit is barred under the Policies.

82.

Accordingly, Kinsale is entitled to a declaration that Kinsale does not owe a duty to defend Brentwood or SDGA in connection with the Underlying Lawsuit pursuant to the Policies' Duty to Defend Exclusions.

## COUNT VIII – EXCESS POLICY'S EVICTION AND FAILURE TO MAINTAIN EXCLUSION PRECLUDES COVERAGE IN THE UNDERLYING LAWSUIT

83.

Kinsale Repeats and re-alleges each of the forgoing paragraphs as if fully set forth herein.

84.

The Excess Policy does not cover any claims arising out of the violation of law involving any duty to maintain property in safe condition. (Ex. D, Excess Policy, CAX3084 0718, p. 1 of 1).

85.

Here, the Underlying Lawsuit alleges that the shooting occurred as a result of the Underlying Defendants' negligence in failing to maintain the property. (Ex. A, Complaint, ¶ 28).

86.

Even if this matter involved an occurrence, which it does not, this matter would be barred from coverage pursuant to the Excess Policy's Eviction and Failure to Maintain exclusion.

87.

Coverage for the Underlying Lawsuit is, therefore, excluded by the Excess Policy's Eviction and Failure to Maintain exclusion, as all the alleged causes of action within the Underlying Lawsuit would not have occurred without the Underlying Defendants' alleged failure to maintain the property in a safe manner.

88.

Accordingly, Kinsale is entitled to a declaration that Kinsale does not owe a duty to defend or indemnify Brentwood or SDGA is connection with the Underlying Lawsuit pursuant to the Excess Policy's Eviction and Failure to Maintain Exclusion.

## COUNT IX – DECLARATORY JUDGMENT:
## PUNITIVE DAMAGES AND STATUTORY ATTORNEY'S FEES
## ARE NOT COVERED UNDER THE POLICIES

Kinsale Repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

89.

Subject to its terms, conditions, and exclusions, the Primary Policy provides coverage for sums an insured becomes legally liable to pay as damages because of "bodily injury" caused by an "occurrence."

90.

"Occurrence" is defined in the Primary Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. C, Primary Policy, CG 00 01 04 13, p. 15 of 16).

91.

The damages alleged in the Underlying Lawsuit concerning punitive damages and O.C.G.A. § 13-6-11 expenses of litigation and attorney's fees, do not constitute damages caused by an "occurrence" under the Primary Policy.

92.

The Excess Policy contains a punitive damages exclusion that states "this insurance does not apply to any claim or suit for any punitive or exemplary damages,

fines or penalties arising out of injury or damage." (Ex. D, Excess Policy, CAX3045 0110, p. 1 of 1).

93.

Accordingly, Kinsale is entitled to a declaration that Brentwood and SDGA are not entitled to coverage in the Underlying Lawsuit for allegations concerning punitive damages and/or statutory attorney's fees as they were not caused by an occurrence and are otherwise barred by the Excess Policy's punitive damages exclusion.

**COUNT X – DECLARATORY JUDGMENT:
KINSALE IS ENTITLED TO RECOVER EXPENSES INCURRED IN
DEFENDING THE UNDERLYING DEFENDANTS AGAINST THE
UNDERLYING LAWSUIT**

94.

Kinsale repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95.

Kinsale agreed to defend Brentwood and SDGA against the Underlying Lawsuit subject to a full and complete reservation of rights. (Ex. E, Reservation of Rights).

96.

In the reservation of rights, Kinsale expressly stated that it reserved the right to seek recovery of any non-covered defense costs and attorney's fees. (Ex. E, Reservation of Rights).

97.

For the reasons detailed in this declaratory judgment action, Brentwood and SDGA are not entitled to a defense or indemnity for any of the claims asserted in the Underlying Lawsuit.

98.

Accordingly, Kinsale is entitled to a declaration that Brentwood and SDGA must reimburse it for the defense costs and attorney's fees it expended on the defense of Brentwood and SDGA in the Underlying Lawsuit.

**WHEREFORE,** Kinsale respectfully requests that the Court:

(1) Declare that the Underlying Lawsuit does not allege an occurrence, and as such, there is no coverage under the Policies;

(2) Declare that the Policies' Assault and Battery exclusions bar coverage in connection with the Underlying Lawsuit, and therefore, Kinsale does not owe any Defendant a defense or indemnity from the Underlying Lawsuit;

(3) Declare that the Excess Policy's Absolute Firearms Exclusion bars coverage in connection with the Underlying Lawsuit, and therefore, Kinsale does not owe any Defendant a defense or indemnity from the Underlying Lawsuit under the Excess Policy;

(4) Declare that the Policies' Eviction and Failure to Maintain Exclusion bars coverage in connection with the Underlying Lawsuit, and therefore, Kinsale does not owe any Defendant a defense or indemnity from the Underlying Lawsuit under the Primary Policy;

(5) Declare that the Policies' Duty to Defend Exclusions preclude any duty for Kinsale to provide a defense to Brentwood and SDGA in connection with the Underlying Lawsuit, and therefore, Kinsale does not owe any Defendant a defense from the Underlying Lawsuit;

(6) Declare that the Policies bar coverage for any punitive damages and statutory attorneys' fees awarded in connection with the Underlying Lawsuit;

(7) Declare that Kinsale is entitled to recover expenses incurred relating to the defense it provided Brentwood and SDGA against the Underlying Lawsuit subject to a reservation of rights; and

(8) Award Kinsale such other further relief that the Court may deem just and proper.

Respectfully submitted this 8th day of January, 2025.

**FIELDS HOWELL LLP**
665 8th NW
Atlanta, Georgia 30318
404.214.1250 (Telephone)
404.214.1251 (Facsimile)
pfields@fieldshowell.com
skahn@fieldshowell.com
rmarcuccilli@fieldshowell.com

*/s/ Stephen A. Kahn*
Paul Fields, Jr.
Georgia Bar No.: 003420
Stephen A. Kahn
Georgia Bar No.: 808929
Ralph Marcuccilli
Georgia Bar No.: 882336

*Counsel for Plaintiff Kinsale Insurance Company*